## ST. LOUIS & S. F. R. CO. v. BROWN.

No. 1368. Opinion Filed January 9, 1912.

Rehearing Denied March 12, 1912.

(122 Pac. 136.)

**RAILROADS—Operation—Injuries to Animals on Track.** In an action against a railway company to recover for a cow, killed by its train at a place where the herd law is in force, it is error to instruct the jury that it is the duty of those operating its trains to keep a constant and proper lookout to discover cattle and other stock that may be on its track or in dangerous proximity thereto. In such cases, the duty of defendant's employees is to exercise ordinary care to avoid injuring the animals after their peril is discovered.

(Syllabus by Sharp, C.)

*Error from Marshall County Court;*
*J. W. Falkner, Judge.*

Action by M. E. Brown against the St. Louis & San Francisco Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded for new trial.

*W. F. Evans, R. A. Kleinschmidt,* and *Fred E. Suits,* for plaintiff in error.

*Summers Hardy* and *Wm. M. Franklin,* for defendant in error.

Opinion by SHARP, C.   This action was originally brought before a justice of the peace in Marshall county.   On the trial, the plaintiff prevailed.   Upon appeal to the county court, plaintiff again recovered judgment.

Marshall county is situated in what was formerly the Indian Territory, and, prior to admission into the Union of the state of Oklahoma, the eastern part thereof, commonly known as the Indian Territory, was without a law restraining domestic animals; but, on the contrary, such animals were permitted to run at large.   Article 1, c. 1, p. 39, Sess. Laws 1903, providing for a herd law, was extended in force in the state by the Schedule to the Constitution and the Enabling Act.   *Leflore v. Sanders,* 24 Okla. 301, 103 Pac. 858.   It provides:

"Section 1. Every owner of swine, sheep, goats, stallions, or jacks, shall restrain them at all times and seasons of the year from running at large, in the territory of Oklahoma.

"Sec. 2. All domestic animals other than those mentioned in section one hereof, shall be, by the owner thereof, restrained from running at large in said territory, unless permitted to run at large as hereafter provided in this act."

The statute then provides for the creation of stock districts, the holding of elections, etc., whereby certain territory may be released from the operation of the statute.

It is not shown by the record that either Marshall county or that part thereof wherein the accident occurred had been released from the operation of this statute at the time of the killing of the cow of defendant in error; and we cannot indulge the presumption that it was, but, on the other hand, must conclude that this law was in force in Marshall county.

Section 1389, Comp. Laws 1909, provides:

"It shall be the duty of every person or corporation owning or operating any railroad in the state of Oklahoma to fence its

road, except at public highways and station grounds, with a good and lawful fence."

Section 1392 provides:

"Whenever any railroad corporation or the lessee, person, company, or corporation operating any railroad, shall neglect to build and maintain such fence, as provided in this act, such railroad corporation, lessee, person, company, or corporation operating the same, shall be liable for all animals killed by reason of the failure to construct such fence."

We do not understand that the action was predicated upon this latter statute, but, instead, was based upon the company's common-law liability for the negligent acts of its servants and employees. We agree with counsel for defendant in error that the *onus* was upon the railway company to show that the accident occurred at a point where it was by statute exempted from maintaining a fence along its road. *Union Pacific R. R. Co. v. Dyche*, 28 Kan. 200, and cases cited; *International, etc., Ry. Co. v. Dunham*, 68 Tex. 231, 4 S. W. 472, 2 Am. St. Rep. 484; *Wilder v. Chicago, etc., Ry. Company*, 70 Mich. 382, 38 N. W. 289; *Cox v. Minneapolis, etc., Ry. Co.*, 41 Minn. 101, 42 N. W. 924; *Indianapolis, etc., Ry. Co. v. Lindley*, 75 Ind. 426.

Ed Michael, a witness for defendant in error, testified that the animal was about 200 feet from the depot, *within* the east switch. G. T. Jewell, the front brakeman, testified that when he saw the cow he was in the gangway between the engine and the tender, about 100 feet from the front end of the depot or platform at Woodville; that the cow was struck about 60 or 65 feet south of the platform. E. A. Heffner, fireman, testified that he rang the bell in going through stations and over street crossings, and that he was ringing the bell when he first saw the cow, and that he was about two rail lengths, or 60 feet, from the depot when the cow was struck, and that the train was stopping for the station. O. W. Jones, station agent, testified that he looked out of the window and saw the pieces of the animal working out from under the engine as it came up to the depot. It was admitted that the accident occurred within the

incorporated limits of Woodville, and there was other testimony that the accident occurred near the depot.

Station grounds, *prima facie,* it has been said, include all the right of way left unfenced between the switches and cattle guards on either side of the platform, with the switches and side tracks, unless they are shown to be unreasonable in extent.    Ingham on the Law of Animals, 684; *Mills & Le Claire Lumber Co. v. Chicago, etc., Ry. Co.,* 94 Wis. 336, 68 N. W. 996.

Counsel for plaintiff in error requested the court to instruct that, if the jury found from the evidence that the animal was grazing or roaming near its tracks within the station grounds of the town of Woodville, and that the animal in question did not make any move to go upon the track of defendant and in front of the approaching train until the train had approached so near the animal as to make it dangerous or impossible to stop the train before hitting it, taking into consideration the speed of the train, they should find the issues for the defendant. The court refused to so instruct.    This instruction would have presented squarely to the jury the question whether or not the animal was killed within the station grounds, and defendant in error will not be heard to say that the company failed in its proof on this issue.

Whether a railway company is under an obligation to fence its road at any particular point is, where the facts are undisputed, a question of law for the court; but whether a certain point constitutes a part of the station grounds, where the company may by statute be exempted from maintaining a fence, is a question of fact.    Elliott on Railroads, 1202.    Among the instructions given, were the following:

"You are further instructed, gentlemen of the jury, that it is the duty of railroad companies, in the movement and operation of their trains over the railroad, to use ordinary care and prudence to avoid injuring stock and keep a constant and proper lookout to discover cattle and other stock that may be in dangerous proximity to the railroad or on its track, and to use all ordinary prudence and care to avoid injuring stock when so found.    Therefore you are instructed that it is the duty of

the defendant to keep a lookout for stock that might be on the defendant's track or in dangerous proximity to it, and, when such cattle are discovered, to use ordinary care to prevent killing same; and after using such care and prudence, if same might have been discovered by ordinary care, and the defendant failed to use such ordinary care to prevent injuring or killing the same, then your verdict should be for the plaintiff.

"You are further instructed that if the employees of the defendant did not use ordinary care to discover said stock, and did not keep a lookout for the cow, unless said cow was in such close proximity to the track as to prevent the killing and injury by the use of ordinary care, then your verdict should be for the plaintiff.

"You are instructed that it was the duty of the defendant to keep a lookout for stock that might be upon the defendant's track or in dangerous proximity to it, and that when said cattle were discovered to use ordinary care to prevent injuring or killing the same; and if, after seeing said animal, or after same might have been discovered by the use of ordinary care, the defendant failed to use ordinary care to prevent injuring or killing same, that then your verdict should be for the plaintiff.

"You are further instructed that the rate of speed at which a train may be run depends upon the attending conditions and circumstances, taking into consideration the locality, the density of population, and the probabilities that persons or stock may be upon the track or in close proximity thereto.

"You are further instructed that if you find that the plaintiff's cow was killed within the corporate limits of the town of Woodville, and that said town is a thickly populated community, and that the defendant had reasons to believe that stock might be found in and about the right of way and upon its track in said town, and that said defendant, under all these circumstances, did not use ordinary care to discover cattle upon or near its tracks, and after discovering them, or after they might have been discovered by the use of ordinary care, failed to use ordinary care to prevent injuring or killing them, then your verdict should be for the plaintiff."

In giving the instruction that it was the duty of the company, acting through its servants and employees, to keep a lookout for stock that might be upon the track or in dangerous proximity thereto, in any one of the several forms presented, we think the trial court erred. The decisions of this court in *Missouri,*

*etc., Ry. Co. v. Shepherd,* 20 Okla. 626, 95 Pac. 243, *St. Louis, etc., R. Co. v. Huff,* 26 Okla. 251, 109 Pac. 232, *Ft. Smith, etc., Ry. Co. v. Benson,* 26 Okla 246, 109 Pac. 77, *Ft. Smith, etc., Ry. Co. v. Collins,* 26 Okla. 82, 108 Pac. 550, *St. Louis, etc., R. Co. v. Loftis,* 25 Okla. 496, 106 Pac. 824, and *Missouri, etc., R. Co. v. Ford,* 24 Okla. 352, 103 Pac. 602, were all cases arising in the Indian Terirtory, and were based on the law then in force, permitting domestic animals to run at large. This question had been settled by a long line of decisions of the Circuit Court of Appeals of the Eighth Circuit, or on appeal from the United States Court of Appeals for the Indian Territory.

When the foregoing rule of decision was established, the Indian Territory was a grazing country, where cattle in large numbers ran at large, and the owners thereof were not bound to fence them up; neither were the railway companies compelled. to fence them out. *Gulf, etc., R. Co. v. Washington,* 49 Fed. 347, 1 C. C. A. 286. The rich agricultural resources of the territory were developed to only a small extent. Time has wrought a great change in conditions and the law. Now the agricultural interests control all others in importance. The open range has given way to the inclosed field; cattle grazing has been succeeded by husbandry. Domestic animals are restrained by reason of the statute, and railway companies are required to fence, except at crossings and station grounds. There is a statutory duty imposed, both upon the owner of domestic animals and upon railway companies; hence the earlier decisions are no longer controlling on this court, and cases arising subsequent to November 16, 1907, unless in localities where the herd law has been suspended, would be governed by a different rule of decision, as heretofore determined in *Atchison, etc., Ry. Co. v. Davis & Young,* 26 Okla. 359, 109 Pac. 551, and *Atchison, etc., Ry. Co. v. Ward, ante,* 120 Pac. 982.

In the syllabus to the former case, it is said:

"The plaintiff's mules having trespassed upon the railroad track of defendant without any actual fault on the part of said plaintiffs, *after the presence and peril of the mules were known*

to it, the obligation rested upon it to exercise ordinary care in the management of its trains to prevent injury to such mules."

While the syllabus to the latter case is as follows:

"In an action against the railroad company to recover for horses killed and injured by its train in a county where the herd law is in force, it is error to instruct that it is the duty of employees in charge of the train to exercise reasonable care to discover animals on the track. In such cases, the duty of defendant's employees is to exercise ordinary care to avoid injuring them *after they are discovered.*"

In *Memphis & Little Rock Ry. Co. v. Kerr,* 52 Ark. 162, 12 S. W. 329, 5 L. R. A. 429, 20 Am. St. Rep. 159, approvingly quoted from in *Atchison, etc., Ry. Co. v. Davis & Young, supra,* it was said:

"The extent of the duty which a railroad company owes to the stock upon its track is that the engineer in charge of the train at the time shall use ordinary or reasonable care, *after the stock is discovered* by him, to prevent injuring it, and this negatives the idea that the engineer is bound to keep a lookout for stock."

See, also, *Central Branch R. Co. v. Lea,* 20 Kan. 353; *Stacey v. Winona, etc., Ry. Co.,* 42 Minn. 158, 43 N. W. 905; *Davidson v. Central Iowa Ry. Co.,* 75 Iowa, 22, 39 N. W. 163; *International, etc., Ry. Co. v. Dunham,* 68 Tex. 231, 4 S. W. 472, 2 Am. St. Rep. 484; *Russell v. Maine Central Ry. Co.,* 100 Me. 406, 61 Atl. 899; *Roberds v. Mobile, etc., Ry. Co.,* 74 Miss. 334, 21 South. 10; *Borneman v. Chicago, etc., Ry. Co.,* 19 S. D. 459, 104 N. W. 208.

In *International & Great Northern Ry. Co. v. Cooke,* 64 Tex. 151, Stayton, J., speaking for the court, said:

"If, however, there be a valid ordinance of a city, or a statute, in force, at the time and place where the injury occurs, by which the running at large of stock is made unlawful, then the entry of the animals upon a railway track or other uninclosed land is a trespass. In such case, a railway company will not be responsible to owners for injury done by its cars to animals entering upon its track, unless the conduct of its employees amounts to gross negligence as heretofore defined; for, under such circumstances, railway companies are entitled to presume that all persons will comply with the law which forbids the owner to

permit his animals to run at large; hence are excused from the exercise of that care which will not be necessary if the owner complies with the law, and are excused from the exercise of such care as they would exercise, were it lawful for animals to be at large, and therefore expected to be so."

*Houston, etc., Ry. Co. v. Hollingsworth,* 29 Tex. Civ. App. 306, 68 S. W. 724; *Missouri, etc., Ry. Co. v. Tolbert* (Tex.) 90 S. W. 508; *Houston, etc., Ry. Co. v. Jones* (Tex.) 40 S. W. 845; *Missouri, etc., Ry. Co. v. Russell* (Tex.) 43 S. W. 576.

In what manner the animal killed escaped from the owner's inclosure or came to be at large is not shown by the testimony; and we do not deem the fact that cattle had been permitted to run at large in the town of Woodville as evidence of the fact that the cow, on the day in question, was rightfully at large.

This court has refused to follow the rule announced in Texas and other states, making the company liable for only wanton and willful negligence, where the animal killed was unlawfully running at large, and it would be inconsistent with the statute restraining animals from running at large to require a lookout to be kept where animals could be at large only unlawfully; and we believe the correct rule to be that a railway company is required to exercise only ordinary care to avoid injuring trespassing animals after they are discovered on or in dangerous proximity to the track. This rule should not be construed to extend to cases where domestic animals are in the custody and under the control of a drover or other person. We are not unaware that the rule here announced has been changed by act of the Legislature in many states, particularly in Arkansas. The question is one for legislative, and not judicial, relief.

For the reasons assigned, the judgment of the trial court should be set aside, and the cause reversed and remanded for a new trial.

By the Court: It is so ordered.